CATHERINE D. KEVANE (CSB No. 215501)
ckevane@fenwick.com
FIONA Y. TANG (CSB No. 298101)
ftang@fenwick.com
JOSHUA R. PARR (CSB No. 318549)
jparr@fenwick.com
JULIAN A. SARABIA (CSB No. 359295)
jsarabia@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:     415.875.2300
Facsimile:     415.281.1350

FELIX S. LEE (CSB No. 197084)
flee@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone:   650.988.8500
Facsimile:   650.938.5200

Attorneys for Defendants GitLab Inc., Sytse
Sijbrandij, Brian G. Robins, and David DeSanto

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARLIE DOLLY, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> GITLAB INC., SYTSE SIJBRANDIJ, BRIAN G. ROBINS, and DAVID DESANTO <br><br> Defendants. | Case No.: 5:24-cv-06244-EKL <br><br> **REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT** <br><br> Date:     July 16, 2025 <br> Time:    10:00 a.m. PT <br> Dept.:    Courtroom 7, 4th Floor <br> Judge:   Hon. Eumi K. Lee <br><br> Date Action Filed:  September 4, 2024 |

**TABLE OF CONTENTS**

                                                                                              **Page**

I.      INTRODUCTION ................................................................................................. 1

II.     PLAINTIFF'S FAILURE TO PLEAD ANY ACTIONABLE MISSTATEMENT
        REQUIRES DISMISSAL ...................................................................................... 1

        A.      The SAC Is Puzzle-Pled.............................................................................. 1

        B.      Challenges to Forward-Looking Statements Are Barred by the Safe Harbor........ 2

        C.      The Opposition Confirms that Plaintiff Has Not Alleged Any False or
                Misleading Statement.................................................................................. 4

                1.      The "Premium Price-Driven Growth" Statements Are Not
                        Actionable .................................................................................. 4

                2.      The "AI-Driven Growth" Statements Are Not Actionable ....................... 5

                3.      The Challenged Statements Are Inactionable Puffery ............................... 8

III.    PLAINTIFF FAILS TO PROPERLY PLEAD SCIENTER ............................................... 9

IV.     PLAINTIFF FAILS TO PLEAD LOSS CAUSATION ................................................ 13

V.      CONCLUSION .................................................................................................. 15

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Applestein v. Medivation, Inc.*,
861 F. Supp. 2d 1030 (N.D. Cal. 2012), *aff'd*, 561 F. App'x 598 (9th Cir. 2014) ................. 10

*Azar v. Yelp, Inc.*,
2018 WL 6182756 (N.D. Cal. Nov. 27, 2018).................................................................... 5

*Backe v. Novatel Wireless, Inc.*,
642 F. Supp. 2d 1169 (S.D. Cal. 2009) ...................................................................... 7, 14

*Brendon v. Allegiant Travel Co.*,
412 F. Supp. 3d 1244 (D. Nev. 2019) ........................................................................ 11

*Cheetany v. Bergstrom*,
2022 WL 2541778 (D. Nev. June 21, 2022) .................................................................. 7

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017)...................................................................................... 8

*City of Pontiac Gen. Emps. Ret. Sys. v. First Solar Inc.*,
2023 WL 155861 (D. Ariz. Jan. 10, 2023)................................................................... 14

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
527 F. Supp. 3d 1151 (N.D. Cal. 2021) ...................................................................... 11

*Costabile v. Natus Med. Inc.*,
293 F. Supp. 3d 994 (N.D. Cal. 2018) .......................................................................... 3

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*,
81 F.4th 918 (9th Cir. 2023)..................................................................................... 12

*Felipe v. Playstudios Inc.*,
2024 WL 1380802 (D. Nev. Mar. 31, 2024)................................................................. 14

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023)........................................................................................ 7

*Hartranft v. Encore Cap. Grp., Inc.*,
543 F. Supp. 3d 893 (S.D. Cal. 2021)........................................................................... 3

*Homyk v. ChemoCentryx, Inc.*,
2023 WL 3579440 (N.D. Cal. Feb. 23, 2023)............................................................... 12

*Hsu v. Puma Biotechnology, Inc.*,
2017 WL 3205774 (C.D. Cal. July 25, 2017) ................................................................ 4

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021)........................................................................................ 12

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

*In re Apple Sec. Litig.*,
2020 WL 2857397 (N.D. Cal. June 2, 2020) ................................................................. 5

*In re BioMarin Pharm. Inc. Sec. Litig.*,
2022 WL 164299 (N.D. Cal. Jan. 6, 2022) .................................................................. 12

*In re BioVie Inc. Sec. Litig.*,
2025 WL 947667 (D. Nev. Mar. 27, 2025) ................................................................. 11

*In re Cisco Sys., Inc. Sec. Litig.*,
2013 WL 1402788 (N.D. Cal. Mar. 29, 2013) .............................................................. 2

*In re Extreme Networks, Inc. Sec. Litig.*,
2018 WL 1411129 (N.D. Cal. Mar. 21, 2018) ............................................................ 11

*In re Impinj, Inc., Sec. Litig.*,
414 F. Supp. 3d 1327 (W.D. Wash. 2019) ................................................................. 14

*In re JDS Uniphase Corp. Sec. Litig.*,
2005 WL 43463 (N.D. Cal. Jan. 6, 2005) .................................................................... 7

*In re Maxwell Techs., Inc. Sec. Litig.*,
18 F. Supp. 3d 1023 (S.D. Cal. 2014) ....................................................................... 10

*In re Nimble Storage, Inc. Sec. Litig.*,
2016 WL 7209826 (N.D. Cal. Dec. 9, 2016) ................................................................ 8

*In re Nuvelo, Inc. Sec. Litig.*,
668 F. Supp. 2d 1217 (N.D. Cal. 2009) ...................................................................... 4

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ........................................................................... 12, 13

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) .................................................................................. 13

*In re Quality Sys. Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) ............................................................................. 9, 11

*In re QuantumScape Sec. Class Action Litig.*,
580 F. Supp. 3d 714 (N.D. Cal. 2022) ........................................................................ 9

*In re Splunk Inc. Sec. Litig.*,
592 F. Supp. 3d 919 (N.D. Cal. 2022) ...................................................................... 14

*In re Unity Software Inc. Sec. Litig.*,
2025 WL 1387952 (N.D. Cal. Mar. 12, 2025) ........................................................... 6, 7

*Leventhal v. Chegg, Inc.*,
721 F. Supp. 3d 1003 (N.D. Cal. 2024) .................................................................... 14

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016)...................................................................................... 15

*Lu v. Align Tech.*,
417 F. Supp. 3d 1266 (N.D. Cal. 2019) ......................................................................... 2

*Luo v. Spectrum Pharms., Inc.*,
2024 WL 4443323 (D. Nev. Oct. 7, 2024)..................................................................... 9

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ....................................................................................................... 12

*Mineworkers' Pension Scheme v. First Solar Inc.*,
881 F.3d 750 (9th Cir. 2018) ....................................................................................... 14

*Mulderrig v. Amyris, Inc.*,
492 F. Supp. 3d 999 (N.D. Cal. 2020) ........................................................................... 3

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004)...................................................................................... 10

*Okla. Firefighters Pension & Ret. Sys. v. Snap Inc.*,
2024 WL 5182634 (9th Cir. Dec. 20, 2024) .................................................................. 7

*Palm Harbor Special Fire Control & Rescue Dist. Firefighters Pension Plan v. First
Solar Inc.*,
2023 WL 4161355 (D. Ariz. June 23, 2023) ............................................................... 13

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014).................................................................................. 11, 12

*Prodanova v. H.C. Wainwright & Co.*,
993 F.3d 1097 (9th Cir. 2021)...................................................................................... 13

*Provenz v. Miller*,
102 F.3d 1478 (9th Cir. 1996)........................................................................................ 7

*Roberts v. Zuora, Inc.*,
2020 WL 2042244 (N.D. Cal. Apr. 28, 2020) ............................................................. 11

*Rok v. Identiv, Inc.*,
2017 WL 35496 (N.D. Cal. Jan. 4, 2017) .............................................................. 14, 15

*Scheller v. Nutanix, Inc.*,
2020 WL 5500422 (N.D. Cal. Sept. 11, 2020) ........................................................... 11

*Schueneman v. Arena Pharmaceuticals, Inc.*,
840 F.3d 698 (9th Cir. 2016)........................................................................................... 5

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES
(CONTINUED)**

**Page(s)**

*Shenwick v. Twitter, Inc.*,
282 F. Supp. 3d 1115 (N.D. Cal. 2017) ................................................................ 5, 12

*Thant v. Rain Oncology Inc.*,
2025 WL 588994 (N.D. Cal. Feb. 24, 2025) ............................................................ 14

*Todd v. STAAR Surgical Co.*,
2016 WL 6699284 (C.D. Cal. Apr. 12, 2016) ........................................................... 5

*United Ass'n Nat'l Pension Fund v. Carvana Co.*,
759 F. Supp. 3d 926 (D. Ariz. 2024) ........................................................................ 13

*Veal v. LendingClub Corp.*,
423 F. Supp. 3d 785 (N.D. Cal. 2019) ...................................................................... 10

*Warshaw v. Xoma Corp.*,
74 F.3d 955 (9th Cir. 1996) ........................................................................................ 7

*Weston v. DocuSign, Inc.*,
669 F. Supp. 3d 849 (N.D. Cal. 2023) ........................................................................ 4

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ................................................................................. 3, 8

*Yanek v. STAAR Surgical Co.*,
388 F. Supp. 2d 1110 (C.D. Cal. 2005) ...................................................................... 7

*Zhou v. Faraday Future Intelligent Elec. Inc.*,
2022 WL 13800633 (C.D. Cal. Oct. 20, 2022) ......................................................... 12

*Zhu v. Taronis Techs. Inc.*,
2020 WL 1703680 (D. Ariz. Apr. 8, 2020) ............................................................... 15

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ............................................................................... 10, 13

FENWICK & WEST LLP
ATTORNEYS AT LAW

## I.    INTRODUCTION[1]

The Opposition fails to offer any meaningful response to the pleading deficiencies identified in defendants' Motion.  Most fundamentally, the Opposition confirms that plaintiff cannot articulate the most basic information of which precise statements are alleged to be false and why.  The SAC should be dismissed on that basis alone.

The Opposition likewise confirms that plaintiff has not and cannot identify any specific facts alleged to establish falsity or scienter.  Instead, plaintiff resorts to: (1) reciting conclusory characterizations of the SAC followed by string cites to SAC paragraphs which, on closer inspection, provide no particularized facts or direct support; (2) conflating and commingling threadbare FE and CW allegations without engaging with defendants' arguments explaining why those allegations are unreliable; and (3) relying on boilerplate, inapposite case citations, all without engaging with the substance of plaintiff's own cited authority.  Each of those tactics, confirms rather than negates plaintiff's myriad pleading deficiencies, and the SAC should be dismissed with prejudice.

## II.    PLAINTIFF'S FAILURE TO PLEAD ANY ACTIONABLE MISSTATEMENT REQUIRES DISMISSAL

### A.    The SAC Is Puzzle-Pled

Challenged to explain which portions of the SAC's 40 pages of block quotes plaintiff alleges are false, and for what reason, plaintiff offers a confused response which confirms the SAC should be dismissed as an impermissible puzzle pleading.  Opp. at 7-9; *see* Mot. at 8-10.  The Opposition claims that the misstatements in the SAC can be identified by looking at emphasized text in *some* paragraphs, but where there is *no* emphasis, the statements are supposedly false "in their entirety."  Opp. at 9 n.2.  Following this instruction – which is not found anywhere in the SAC – shows the fallacy of plaintiff's claim.  Many of the emphasized statements are clearly *true*, such as "[i]n 1Q, we delivered 5 new AI features. And in the first half of May alone, we delivered 5 additional features," (¶ 148) and "we currently have between 12 and

---

[1] Capitalized terms not defined herein have the meanings set forth in Defendants' Motion to Dismiss Second Amended Complaint (ECF No. 50, "Motion" or "Mot.").  Unless otherwise noted, references to "¶" or "¶¶" are to paragraphs in the SAC.  Unless otherwise indicated, italicized quotations from the SAC or exhibits have emphasis added.

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

16 models we use to power GitLab for our AI features," (¶ 188). Conversely, many of the paragraphs which are alleged to be false in their "entirety" (because they contain no emphasis), likewise include statements that are indisputably true, such as the Duo feature being "priced at $9"; that GitLab had "10 features now available to customers"; or that the Company "announced earnings on Tuesday, and we said we see a stabilization. Q2 was very similar to Q1." *See, e.g.*, ¶¶ 174, 176, 178, 205.

Review of a key example identified in the Motion – a nine-paragraph block quote spanning three pages (half of which is emphasized) of remarks during GitLab's Q1 FY 2024 earnings call – confirms the point. Plaintiff claims that the bolded portions are alleged to be false, including a statement that "[t]his quarter, we had many conversations with senior-level customers . . . ." ¶ 148. But that statement is *not alleged to be false or misleading*. Indeed, plaintiff concedes GitLab did have conversations with customers during the quarter. *See* Opp. at 9, n.2. Likewise, the emphasized statement that AI was motivating customers to "assess how they develop, secure and operate software through a new lens" is not itself false and plaintiff alleges no facts to the contrary. *Id.* Such pleading impermissibly leaves it to "defendant[s] and the court to 'match up' the statements that form the basis of [] plaintiff's claims with the reasons why those statements are misleading." *In re Cisco Sys., Inc. Sec. Litig.*, 2013 WL 1402788, at *5 (N.D. Cal. Mar. 29, 2013); *see also* Mot. at 9-10. It is therefore not surprising that *none* of plaintiff's cited authorities stands for the proposition that alternately emphasizing or not emphasizing statements (some of which are admittedly true) meets the PSLRA's requirement of identifying "***exactly*** which statements Plaintiff asserts to be false or misleading." *Lu v. Align Tech.*, Inc., 417 F. Supp. 3d 1266, 1275 (N.D. Cal. 2019); Opp. at 8-9. Consequently, plaintiff's puzzle pleading mandates dismissal. Mot. at 9-10.

**B.    Challenges to Forward-Looking Statements Are Barred by the Safe Harbor**

The Motion established that the bulk of the alleged misstatements are challenged as false because they relate to the Company's FY 2025 guidance, and are therefore forward-looking and protected under the safe harbor. Mot. at 10-11. Plaintiff does not dispute that these statements reflect **assumptions** underlying the FY 2025 guidance, which places them squarely within the

protections of the safe harbor. *Id.*; Opp. at 13-15; *Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 913 (S.D. Cal. 2021) (arguments unaddressed in an opposition are waived).

Unable to avoid the implications of that concession, plaintiff attempts to deflect by claiming (incorrectly) that various statements are not subject to the safe harbor because they are "mixed" statements which "refer[] to present or historical facts when discussing past events and/or current conditions." Opp. 13-14. But the cases cited by plaintiff are distinct as they involved a "concrete description of the *past* and *present* state of the" business or relied on misstated historical facts or revenues. *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021) (citation omitted; emphasis added); *see, e.g.*, *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1020 (N.D. Cal. 2020) (forward-looking statements based on allegedly misstated revenues not protected); *Costabile v. Natus Med. Inc.*, 293 F. Supp. 3d 994, 1013 (N.D. Cal. 2018) (stated expectation of receipt of payment omitted major customer's previous default).

There are no such allegations here. Plaintiff does not challenge any statement regarding past financials or performance, nor does he claim historical results were inaccurate. Instead, plaintiff focuses on historical data as ***extrapolated into GitLab's guidance for FY 2025***, *i.e.*, *as assumptions underlying GitLab's future performance*, which are subject to the safe harbor as a matter of law. *See, e.g.*, ¶¶ 148 ("[*W*]*e expect customers will increasingly turn to GitLab as they build machine learning models and AI into their applications.*"), 150 ("[*W*]*e expected* the Premium price increase to have minimum impact in FY '24 with *greater impact in FY '25 and beyond.*"). "[S]uch 'statement[s] of the assumptions underlying or relating' to a declared objective are . . . forward-looking statements." *Wochos*, 985 F.3d at 1192 (citation omitted).

The Motion also established that the forward-looking statements were accompanied by meaningful risk disclosures, which address the precise risks concerning AI development and pricing changes plaintiff puts at issue in the SAC, thus rendering all statements regarding or underlying GitLab's guidance inactionable. *See, e.g.*, Mot. at 12-13; Ex. 6 at 59-60 (cautioning investors that "our ability to compete depends on many factors . . . including incorporation of AI into [its] services" and "our ability to price our products competitively, including our ability to transition users of our free product offering to a paid version of The DevSecOps Platform").

FENWICK & WEST LLP
ATTORNEYS AT LAW

DEFENDANTS' REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT
3
Case No. 5:24-cv-06244-EKL

Plaintiff has no response.  He argues in the most conclusory terms that GitLab's disclosures are "boilerplate," but *he never discusses the risk disclosures in any respect whatsoever*.  Opp. at 15.

The Opposition also does not dispute that the SAC fails to cite a single particularized fact to support plaintiff's claim that "defendants had actual knowledge of falsity," and indeed, doubles down by repeating that assertion without a citation to a single supporting fact or to the SAC. Opp. at 14.  This is an independent reason to dismiss all forward-looking statements from the SAC.  *See* Mot. at 14.  Plaintiff's passing reference to inapposite authority highlights the pleading deficiencies here.  *See, e.g.*, *In re Nuvelo, Inc. Sec. Litig.*, 668 F. Supp. 2d 1217, 1221, 1230 (N.D. Cal. 2009) (statements about future regulatory approval not protected by safe harbor where defendants' failure to disclose known and negotiated regulatory standards "concealed or downplayed known present risks related to regulatory approval"); *Hsu v. Puma Biotechnology, Inc.*, 2017 WL 3205774, at *2-3 (C.D. Cal. July 25, 2017) (defendant received email that "identified the precise information investors sought," including negative safety results and dropout rates); *Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 875-80 (N.D. Cal. 2023) (defendants "actively tracked" internal metrics that "proved out" reduced demand, evidencing falsity of statement that there was no "slowdown in demand").

### C.    The Opposition Confirms that Plaintiff Has Not Alleged Any False or Misleading Statement

The Motion established that plaintiff failed to allege the requisite particularized facts to plead any false or misleading statement regarding AI features in DevSecOps; the Premium-tier price increase; and statements describing GitLab's AI offerings as compared to competitors.  Mot. at 14-20.  Plaintiff cedes the point on many statements, challenging only two categories: (1) Premium price driven growth statements and (2) AI-driven growth statements.

#### 1.    The "Premium Price-Driven Growth" Statements Are Not Actionable

Plaintiff makes a cursory attempt to argue that GitLab's statements regarding its Premium-tier price increase were false and misleading because "they concealed adverse internal information concerning GitLab's primary growth driver, net seat expansion, which was on a sequential decline in FY2024 due to price sensitivity in its Premium tier."  Opp at 10.  But

FENWICK & WEST LLP
ATTORNEYS AT LAW

plaintiff does not and cannot point to any allegations to support that claim. At no point does the SAC plead particularized facts showing what the supposed "adverse internal information" was, when it was received and by whom, and how it undermined the veracity of the challenged statements. Plaintiff does not deny that no FE or CW even mentions the price increase or net seat expansion.[2] *Id.* Nor does plaintiff allege any of GitLab's metrics concerning renewals, bookings, or churn – which would quantify the impact of any price increase – were false. *See* Opp. at 10-11.

Plaintiff's cited authority underscores that he has not identified any affirmative representations directly contradicted by contemporaneous facts. *Id.* In *Schueneman v. Arena Pharmaceuticals, Inc.* – in direct contrast to the instant case – plaintiff pled particularized facts to establish that the representation that "all the animal studies" supported FDA approval was misleading where defendants knew of contemporaneous, negative results raising concerns. 840 F.3d 698, 708 (9th Cir. 2016); *see also Todd v. STAAR Surgical Co.*, 2016 WL 6699284, at *6 (C.D. Cal. Apr. 12, 2016) (positive statements that facilities complied with FDA rules misleading where defendants were aware that FDA had observed "numerous violations"); *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1139 (N.D. Cal. 2017) (reassuring investors of positive engagement trends while failing to disclose declines in primary engagement metric); *In re Apple Sec. Litig.*, 2020 WL 2857397, at *10-11 (N.D. Cal. June 2, 2020) (CEO "affirmatively opined on the causes of the high upgrade rate" without disclosing existence of true cause); *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *11 (N.D. Cal. Nov. 27, 2018) (misattributed "modest slowdown" in 2016 to "election" and "vacation time" without disclosing negative customer trends). Because the SAC does not contain these types of allegations, it must be dismissed.

### 2. The "AI-Driven Growth" Statements Are Not Actionable

Plaintiff takes a similar (and similarly defective) tack in cobbling together snippets from 28 different paragraphs in the SAC, which plaintiff claims falsely stated that growth was driven

---

[2] To the extent these statements reflect assumptions underlying GitLab's FY 2025 guidance and concerning future expectations about the Company's performance, they are covered by the PSLRA safe harbor. *See supra*, Section II.B. Defendants' statements concerning the price increase are also inactionable puffery and opinion. *See infra*, Section II.C.3.

FENWICK & WEST LLP
ATTORNEYS AT LAW

by adoption of GitLab's "DevSecOps Platform" and AI features. Opp. at 11-12. Plaintiff contends these statements were false because GitLab's AI features were not available until the second half of FY 2024, such features were overstated, and there was negative customer feedback. *Id.* at 11-12. But plaintiff does not identify any facts supporting his conclusory assertions. There is no allegation explaining what features were not available to customers, why the features did not possess the capabilities the Company claimed, which customers supposedly complained, about what, when, and to whom – nothing that would establish the basic how or why any statements were false when made. Underscoring the point, plaintiff suggests for example that statements regarding AI were false because GitLab's AI features were not available until the "second half of FY2024," but references a challenged statement from December of that fiscal year, after the features were available. Opp. at 11-12 (citing to ¶ 192, quoting the Q3 2024 earnings report).[3]

The Opposition also fails to address the FE and CW pleading defects identified in the Motion. Opp. at 11-12; Mot. at 15-16, 20-22. The Opposition claims that customer feedback was allegedly "not great" and that GitLab's AI features were "hard to sell to customers," but never identifies who those customers were, when (or to whom) such statements were made, which "AI-powered features" were at issue, or any concrete impact on sales growth. *See* Mot. at 16. The Opposition also points to FE1's allegations of "problems" with GitLab's AI product, and claims they were "reported to Defendants." Opp. at 19. But the SAC says nothing of the sort. ¶ 118 (claiming "consistent conflict amongst GitLab's senior executives" without reference to any alleged issues with GitLab's AI features). The sparse allegations that FE2 watched promotional videos and that FE4 interacted with AI development team members fail to explain how or why FE2 and FE4 (who left the Company just one month into the Class Period) had any personal knowledge about the state of GitLab's AI offerings at the time of the alleged misstatements. Mot. at 20-21; *In re Unity Software Inc. Sec. Litig.*, 2025 WL 1387952, at *6-9 (N.D. Cal. Mar. 12,

---

[3] The Opposition ignores that many of the statements relate to AI generally or industry-wide – not just as to the Company – and are otherwise too general to be actionable. *See* Mot. at 14-15. Likewise, the Opposition offers no real response to the fact that the statements are inactionable puffery. *Id.* at 15-16; *see infra*, Section II.C.3.

FENWICK & WEST LLP
ATTORNEYS AT LAW

DEFENDANTS' REPLY ISO MOTION TO
DISMISS SECOND AMENDED COMPLAINT

6

Case No. 5:24-cv-06244-EKL

2025) (J. Lee) (rejecting allegations that were "too vague and generalized, and do not specifically identify technical problems and customer complaints"). Without specific facts evidencing personal knowledge, including through the duration of the Class Period, any assertions by these FEs amount to "unsubstantiated speculation." *Id.* at \*6 (pre-class period observations by CWs did not establish falsity). Equally infirm are plaintiff's allegations that FEs attended unidentified meetings (without specifying dates, attendees, discussions, or substance) or that CWs had unsubstantiated views on GitLab's AI products. Mot. at 15-16, 20-22.

The string of cases cited by plaintiff once again serves to highlight the comparative absence of well-pleaded, particularized facts in the SAC. *See, e.g.*, *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 771 (9th Cir. 2023) (touting strength of pipeline misleading where defendants inaccurately blamed struggles on economic conditions while pressuring employees to categorize deals as won without customer commitments); *Okla. Firefighters Pension & Ret. Sys. v. Snap Inc.*, 2024 WL 5182634, at \*2 (9th Cir. Dec. 20, 2024) (defendant's statement contradicted by witness who confirmed defendant was shown a spreadsheet indicating statement false); *Provenz v. Miller*, 102 F.3d 1478, 1489 (9th Cir. 1996) (statement that "shipment levels would increase" actionable in light of evidence that product was "plagued with delays and performance problems so severe that [company] was losing orders and constantly cutting sales forecasts"); *Cheetany v. Bergstrom*, 2022 WL 2541778, at \*7 (D. Nev. June 21, 2022) (false to claim software development was completed when it had not even commenced); *Backe v. Novatel Wireless, Inc.*, 642 F. Supp. 2d 1169, 1181 (S.D. Cal. 2009) (misleading to tout strength of market demand while failing to disclose major customer's discontinuation of orders); *In re JDS Uniphase Corp. Sec. Litig.*, 2005 WL 43463, at \*6 (N.D. Cal. Jan. 6, 2005) (misleading to tout future demand where more than 50 CWs specifically reported widespread "substantial order cancelations" and "large-scale layoffs"); *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957, 959-60 (9th Cir. 1996) (assurance that "everything is going fine" with drug approval misleading where defendants were aware of negative internal results from clinical studies); *Yanek v. STAAR Surgical Co.*, 388 F. Supp. 2d 1110, 1119, 1130 (C.D. Cal. 2005) (statements implying prompt FDA approval misleading where company failed to disclose negative FDA inspection results).

DEFENDANTS' REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT        7        Case No. 5:24-cv-06244-EKL

FENWICK & WEST LLP
ATTORNEYS AT LAW

And despite the Opposition's focus on comparisons between GitLab's AI products and those offered by its competitors, Opp. at 1-5, plaintiff does not address and thus concedes defendants' argument that statements comparing GitLab's product features with those of its competitors based on publicly available information are not actionable.  Mot. at 19; *see also In re Nimble Storage, Inc. Sec. Litig.*, 2016 WL 7209826, at *9 n.10 (N.D. Cal. Dec. 9, 2016) (defendants not required to disclose product features and consumer preferences that were publicly available elsewhere).

### 3. The Challenged Statements Are Inactionable Puffery

The Motion established that many of the challenged statements are inactionable puffery and opinion, including statements such as: "[w]e're excited about Duo," "we have a really compelling story," "I'm happy this quarter," "[v]ery excited" about announced AI features, and "[w]e believe buying patterns appear to have stabilized."  Mot. at 16-17; SAC ¶¶ 148, 163, 168, 170, 172, 188, 195.  Plaintiff's response confirms that these statements are not actionable.

Plaintiff vaguely and confusingly argues that the Motion did not address statements "that were not couched with any prefatory opinion language, such as 'I think' or 'I believe,' but rather, 'expresse[d] certainty' or described what defendants have 'seen.'"  Opp. at 15.  But plaintiff never explains which statements fall into this category, how they represent past or present trends, or what "facts" were represented.  Such speculative argument is no substitute for the law, which establishes that the challenged statements are inactionable opinions.  *Wochos*, 985 F.3d at 1196.

Next, plaintiff claims in the broadest and most conclusory of terms that unspecified statements "are also actionable because Defendants 'lacked [a] basis for making those statements.'"  Opp. at 16.  Plaintiff makes no effort to identify what those statements are, how any of them lacked a basis, or what facts would support that conclusion.  *Id*. at 16-17.  Plaintiff's claim that the explanation for alleged lowered guidance was somehow an "admission" is nothing more than mischaracterization and speculation that fails to meet the required pleading standard for opinion statements under an omission theory.  *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017) (pleading misrepresentation by omission requires "particular (and material) facts going to the basis for the issuer's opinion—

FENWICK & WEST LLP
ATTORNEYS AT LAW

facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission made the opinion statement at issue misleading") (citation omitted).  Plaintiff never attempts to tie his allegations to any challenged statement, much less explain how they demonstrate that any challenged statement lacked a reasonable basis at the time they were made.

Plaintiff's argument that "[s]uch statements . . . 'when taken in context,' were concrete assurances about existing customer buying behaviors and product demand trends that were highly material and 'address specific aspects of [GitLab]'s operation that [Defendants] kn[e]w[] to be performing poorly,'" Opp. at 16-17, likewise fails to differentiate (or even identify) which statements he is referring to and is therefore patently defective.  For example, how does a statement that "[w]e're excited about Duo" make any "concrete assurance about customer buying behaviors or product demand"?  Plaintiff offers no explanation, much less allegations of concrete facts.

Plaintiff does not address defendants' cited authorities, which establish that the challenged statements are quintessential statements of opinion or corporate optimism routinely ruled inactionable as a matter of law.  Mot. at 16-17.  And plaintiff's cited authority confirms the point.  *See, e.g.*, *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 739 (N.D. Cal. 2022) (dismissing "record-breaking" statement as puffery); *In re Quality Sys. Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017) (challenged statements actionable because they "provided a ***concrete description of the past and present state***" of that pipeline, including "what proportion of the large and mid-sized practice markets [defendant] believed were greenfield") (emphasis added).  At bottom, plaintiff confirms that the SAC contains nothing more than speculation, which "even if not illogical . . . is inadequate to survive the PSLRA's heightened pleading standard." *Luo v. Spectrum Pharms., Inc.*, 2024 WL 4443323, at *10 (D. Nev. Oct. 7, 2024).

### III.    PLAINTIFF FAILS TO PROPERLY PLEAD SCIENTER

The Motion established that the SAC does not come close to pleading specific contemporaneous facts on a defendant-by-defendant basis to allege an intent to defraud or deliberate recklessness so egregious and obvious that it is tantamount to actual intent.  Mot. at 8, 20-24.  Apart from conclusory denials, plaintiff fails to refute any of defendants' arguments.

FENWICK & WEST LLP
ATTORNEYS AT LAW

***The FEs and CWs do not establish scienter.***  It is black-letter law that an anonymous "witness" must have personal knowledge of the alleged facts and offer statements indicative of scienter.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009).  The Motion established that none of the FEs or CWs come close to meeting this test: none had any contact with the Individual Defendants; none had direct, much less substantive involvement with GitLab's AI offerings, pricing, or guidance; and none identify a single date, document, or theory that could conceivably establish scienter.  Moreover, FE2 and FE4 were only present for one month of the Class Period, and CW1 and CW2 had no direct knowledge of GitLab's internal business.  Plaintiff makes no attempt to challenge these fundamental defects, a concession that dooms his claims.  Mot. at 20-22; *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 814 (N.D. Cal. 2019) ("None of the CWs had any direct (or indirect) contact with any of the Individual Defendants and therefore cannot provide reliable insight into the Defendants' state of mind.").

Instead, plaintiff contends that merely listing "each witness'[s] job title, their responsibilities, tenures, and for FE1, FE2, and FE4, to which executive they reported" is sufficient.  Opp. at 18.  Not so.  Basic identifying information cannot substitute for personal knowledge of specific facts going to defendants' state of mind.  *In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1035 (S.D. Cal. 2014) (CW's job title and responsibilities alone were insufficient to support inference of scienter); *Applestein v. Medivation, Inc.*, 861 F. Supp. 2d 1030, 1037 (N.D. Cal. 2012), *aff'd*, 561 F. App'x 598 (9th Cir. 2014) (same).

Plaintiff next resorts to conflating the FE and CW allegations to assert they "corroborated" that demand for GitLab's AI features was "weak" in part because they were not competitive with GitHub's.  Opp. at 19 (citing ¶¶ 112-114, 116-117).  But as explained in the Motion, the FE and CW allegations are conclusory and do not identify a single date, customer, metric, report, or any other fact showing that any statement was false, let alone that defendants knew that any such statement was false when made.  *See* Mot. at 15-16.  Plaintiff's vague allegations are no substitute for the contemporaneous reports or data, including "hard numbers," specific customer deals, and concrete dates provided by credible witnesses that courts rely on to infer scienter.  *Nursing Home*

*Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230-31 (9th Cir. 2004).[4]

Plaintiff's cited cases demonstrate the weakness of the scienter allegations here. In *Quality Systems*, the CWs had direct access to the disputed information, including "personal knowledge of executive-level management's real-time access to Salesforce reports" and "arrang[ing] for sales reports to be automatically delivered to . . . the CFO's office" – allegations that are nowhere to be found in the SAC. *Quality Sys.*, 865 F.3d at 1145; *see also In re Extreme Networks, Inc. Sec. Litig.*, 2018 WL 1411129, at *27 (N.D. Cal. Mar. 21, 2018) (considering CW allegations of "personal conversations" during the relevant time period); *Roberts v. Zuora, Inc.*, 2020 WL 2042244, at *10-11 (N.D. Cal. Apr. 28, 2020) (CWs "directly involved" with projects at issue and recounted conversations, meetings, and an email thread raising concerns to defendants); *In re BioVie Inc. Sec. Litig.*, 2025 WL 947667, at *13 (D. Nev. Mar. 27, 2025) (relying on audit reports that defendants reviewed and commented on); *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 527 F. Supp. 3d 1151, 1187 (N.D. Cal. 2021) (CW allegations identified specific meetings and detailed topics discussed, including instances where CW prepared slides presented); *Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1260-61 (D. Nev. 2019) (FEs alleged "direct contact with individual defendants in daily briefings"); *Scheller v. Nutanix, Inc.*, 2020 WL 5500422, at *9 (N.D. Cal. Sept. 11, 2020) (CW alleged Salesforce reports created specifically for defendant and reviewed daily).

***Plaintiff's core operations argument likewise fails.*** Proof under the core operations theory is "not easy," requiring "***specific admissions*** by one or more corporate executives of detailed involvement in the minutia of a company's operations" or "witness accounts demonstrating ***actual involvement in creating false reports.***" *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014) (emphasis added). The Opposition confirms that plaintiff has not met and cannot meet this standard. Rather than point to any admission, detailed involvement, or actual fact, plaintiff makes conclusory allegations that the Individual Defendants "controlled all aspects of GitLab," had "access to proprietary information,"

---

[4] The Opposition does not contest and therefore concedes that the SAC does not allege facts demonstrating scienter as to statements about the Premium-tier price increase. Mot. at 17-18.

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

and "spoke publicly" about AI integration and pricing changes, topics which were "integral" to GitLab's growth. Opp. at 19-20. Those are precisely the sort of conclusory allegations courts routinely reject as insufficient to infer scienter. Mot. at 22; *Intuitive Surgical*, 759 F.3d at 1062-63 (core operations inapplicable where no allegations "link[ed] specific reports and their contents to the executives" let alone "between the witnesses and the executives").

Review of plaintiff's cited authority further makes clear that the allegations in the SAC do not present the "rare circumstance" required to invoke the core operations theory, as the events in those cases are inapposite to those alleged in the SAC. *Intuitive Surgical*, 759 F.3d at 1063; *see, e.g.*, *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 49 (2011) (company lied in press release about results of study confirming product safety when no such study existed); *In re BioMarin Pharm. Inc. Sec. Litig.*, 2022 WL 164299, at *13 (N.D. Cal. Jan. 6, 2022) (pharmaceutical company touted its "good relationship with the FDA" despite defendants' admissions indicating otherwise); *Homyk v. ChemoCentryx, Inc.*, 2023 WL 3579440, at *19 (N.D. Cal. Feb. 23, 2023) (FE witnesses had repeated conversations with CEO-defendant regarding adverse events in trial of company's most promising drug); *Twitter*, 282 F. Supp. 3d at 1146-47 (CW allegations "plausibly alleged" that defendants "monitored closely" metric touted as "key user engagement metric"); *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 946 (9th Cir. 2023) (inferring that "detail-oriented" CEO would have known source of billion-dollar revenue windfall); *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 706 (9th Cir. 2021) (CEO regularly updated on subsidiary's operations would have learned of largest data-security vulnerability in subsidiary's history); *Zhou v. Faraday Future Intelligent Elec. Inc.*, 2022 WL 13800633, at *10 (C.D. Cal. Oct. 20, 2022) (inferring scienter where car manufacturer with no sales misleadingly reported 14,000 vehicle backorders).

***Plaintiff's remaining arguments do not support an inference of scienter.*** Plaintiff does not provide any *facts* connecting executive departures with any of the misstatements challenged in the SAC, much less establish they were suspicious or indicative of scienter. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1062-63 (9th Cir. 2014) (no scienter where plaintiffs "fail to provide any facts to connect [] departures with the problems at issue in this lawsuit"). Plaintiff's

continued inclusion of Ms. Mannix is especially egregious as she departed GitLab following a publicly announced temporary medical leave. *Zucco Partners*, 552 F.3d at 1002. Plaintiff's argument that Mr. Sijbrandij's departure is indicative of scienter ignores that there are no such allegations in the SAC, and the undisputed fact that he remains the executive chairman of the board refutes any inference of scienter. ¶¶ 223, 240-248; *NVIDIA*, 768 F.3d at 1063. Finally, holistic review also does not save plaintiff's claims, as he cannot identify any motive supporting scienter or that any defendant benefitted from the alleged misstatements. Mot. at 23-24; *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1113 (9th Cir. 2021) (lack of a plausible motive weighed against scienter).

## IV. PLAINTIFF FAILS TO PLEAD LOSS CAUSATION

Plaintiff suggests that the March 4, 2024 press release somehow corrected prior statements regarding customer adoption and price sensitivity because "investors learned that GitLab lowered its revenue guidance." Opp. at 22. But as explained in the Motion, GitLab's FY 2025 guidance was *not lowered* and was in line with Wall Street expectations – a fact that plaintiff ignores entirely. Mot. at 6 (citing Exs. 20-22). And even if the FY 2025 guidance fell short of investor expectations, plaintiff's conclusory allegations do not explain how a statement that the Company was "seeing normalization in buying behavior" based on "the current environment" revealed how any of the alleged misstatements were somehow misleading. *See, e.g.*, *Palm Harbor Special Fire Control & Rescue Dist. Firefighters Pension Plan v. First Solar Inc.*, 2023 WL 4161355, at *7 (D. Ariz. June 23, 2023) (earnings miss not a corrective disclosure where plaintiffs "fail[ed] to connect the disclosure to any previous misstatements or omissions" or allege that previously disclosed financials were false); *United Ass'n Nat'l Pension Fund v. Carvana Co.*, 759 F. Supp. 3d 926, 981 (D. Ariz. 2024) (no corrective disclosure where plaintiffs "offer no more than conclusory allegations that [company]'s disappointing financial news was due to Defendants' fraudulent scheme and omissions"); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) ("loss causation requires more" than missed earnings or disappointing guidance).

Plaintiff fails to distinguish defendants' cited authority, and his own cited authority describing what actually is an actionable corrective disclosure highlights the absence here of any

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

such disclosure revealing facts contradicting earlier misstatements or linking alleged misrepresentations with the loss.  Mot. at 24-25; Opp. at 23-25.  *See*, *e.g.*, *In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 952 (N.D. Cal. 2022) (concealed suspension of investments and hiring freeze later revealed when defendants attributed earnings miss to those factors); *In re Impinj, Inc., Sec. Litig.*, 414 F. Supp. 3d 1327, 1334 (W.D. Wash. 2019) (series of announcements revealing reduced revenues, each followed by a stock drop and analyst commentary linking revenue decline with topics under suit); *Thant v. Rain Oncology Inc.*, 2025 WL 588994, at *10 (N.D. Cal. Feb. 24, 2025) (defendants skipped medical trial phase, increasing risk of failure and causing stock drop).

As to the June 3, 2024 updated guidance, the Opposition confirms that announcement did not reveal new facts and therefore could not be "corrective."  *See Rok v. Identiv, Inc.*, 2017 WL 35496, at *18 (N.D. Cal. Jan. 4, 2017) ("corrective disclosures must present facts to the market that are new" *i.e.*, "publicly revealed for the first time") (citation omitted); *City of Pontiac Gen. Emps. Ret. Sys. v. First Solar Inc.*, 2023 WL 155861, at *5 (D. Ariz. Jan. 10, 2023) (same).  The Opposition quotes selectively from analyst reports discussing the June 3 announcement, but those reports confirm that no new "corrective" information was disclosed and analysts were instead "impressed" by the announced $7M increase in FY 2025 revenue guidance.  Supplemental Declaration of Fiona Y. Tang, Ex. 23 ("GitLab raised its FY25 revenue guidance by $7M . . . despite absorbing a $4M headwind vs. its prior guidance."), Ex. 24 ("we were impressed that GTLB raised its FY25 rev. guidance by ~$7 mil. (vs. ~$4 mil. beat in 1Q)").  Plaintiff's cited authority, in contrast, once again involves corrective disclosures that were readily apparent. *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 752 (9th Cir. 2018) (defendants "disclosed product defects and attendant financial liabilities to the market"); *Novatel Wireless*, 642 F. Supp. 2d at 1188 (admitting demand shift and analyst report confirmed market learned of customer's cancellation); *Leventhal v. Chegg, Inc.*, 721 F. Supp. 3d 1003, 1018 (N.D. Cal. 2024) ("analysts note the probable relationship between alleged misstatements and a stock price decline") (citation omitted); *Felipe v. Playstudios Inc.*, 2024 WL 1380802, at *18 (D. Nev. Mar. 31, 2024) (optimistic statements about release of new video game followed by announcement

abandoning development of the game and resultant decline in revenue).

Finally, plaintiff's argument that a 5% stock price drop is automatically sufficient misses the point as he offers no explanation for why such a *de minimis* drop cannot be attributed to standard market fluctuations. Plaintiff's citation to cases where prior disclosures "removed inflation" is also inapplicable because plaintiff does not allege that the market reacted before the alleged disclosures. *See Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210-11 (9th Cir. 2016) (prior disclosure accompanied by stock drop, analyst reports, and market fears); *Zhu v. Taronis Techs. Inc.*, 2020 WL 1703680, at *5-6 (D. Ariz. Apr. 8, 2020) (corrective disclosure preceded by a 20% stock drop one month earlier); *Rok*, 2017 WL 35496, at *18 (no loss causation where complaint "fail[ed] to account for alternative explanations for [] share price decreases").[5]

## V.    CONCLUSION

For all of the reasons set forth above, the SAC should be dismissed with prejudice.

Dated:   May 16, 2025                          FENWICK & WEST LLP

By: */s/ Catherine D. Kevane*
　　Catherine D. Kevane

Attorneys for Defendants GitLab Inc., Sytse Sijbrandij, Brian G. Robins, and David DeSanto

---

[5] Because plaintiff fails to plead a predicate violation of Section 10(b), their Section 20(a) claim for control person liability must also fail.

DEFENDANTS' REPLY ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT        15        Case No. 5:24-cv-06244-EKL